UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAMELA CATHERINE CHING BEDESKI,

Plaintiff,

v.

THE BOEING COMPANY,

Defendant.

Case No. C14-1157RSL

ORDER GRANTING
MOTION TO DISMISS

This matter comes before the Court on "Defendant Boeing's Motion To Dismiss Pursuant To FRCP 12(B)(6)." Dkt. # 9. Having reviewed the memoranda and case law submitted by the parties, the Court grants defendant's motion for the reasons set forth below:

## I. BACKGROUND

Plaintiff is a former Boeing employee who worked as a procurement financial analyst prior to her termination. Dkt. # 1 (Compl.) ¶ 3.1. In September 2012, at plaintiff's request, defendant placed plaintiff on a medical leave of absence; this leave of absence continued until her termination on July 29, 2013. Id. ¶¶ 3.1, 3.4. The Complaint suggests that plaintiff went on leave because she was suffering from anxiety, panic attacks and neck pain, and that these symptoms persisted throughout her leave period. Id. ¶ 3.1.

On June 20, 2013, plaintiff's doctor sent a report to the company that administered medical leaves of absence for defendant's employees; this report listed plaintiff's "expected

ORDER GRANTING
MOTION TO DISMISS - 1

1  return to work date" as July 29, 2013.  Id. ¶ 3.3.

2       On June 29, 2013, defendant terminated plaintiff's employment on the grounds that she

3  had failed to return to work, asserting that June 29, and not July 29, was her return to work date.

4  Id. ¶ 3.4.  Plaintiff did not receive notice of her termination, and only learned that she had been

5  fired in mid-July, when she received a mailing from the Washington State Employment Security

6  Department.  Id. ¶¶ 3.4, 3.6.  Although plaintiff immediately attempted to "correct the apparent

7  miscommunication" concerning her return to work date, defendant refused to undo her

8  termination.  Id. ¶ 3.6.  Plaintiff claims that she was "ready, willing and able to work as of

9  August 2013."  Id. ¶ 3.7.[1]  Plaintiff further claims that defendant fired her in retaliation for

10  "filing a claim for government benefits" earlier in June.  Id. ¶ 3.5.

11       In October 2013, plaintiff filed a complaint against defendant with the United States

12  Equal Employment Opportunity Commission ("EEOC") for violating the Americans with

13  Disabilities Act, 42 U.S.C. 1201 et seq. ("ADA"); on July 17, 2014, she received a "right to sue"

14  letter from the EEOC.  Id. ¶ 3.7.  On July 15, 2014, plaintiff brought this action, alleging that

15  defendant had violated of the ADA and Washington Law Against Discrimination, RCW 49.60 et

16  seq. ("WLAD"); wrongfully terminated her in violation of public policy; and wrongfully

17  withheld her wages.  Id. ¶¶ 4.1-7.6.  On September 9, 2014, defendant moved under Fed. R. Civ.

18  P. 12(b)(6) to dismiss all claims.  Dkt. # 9.

19                              **II.  DISCUSSION**

20       **A.**     **Standard for Motion to Dismiss**

21      Although a complaint need not provide detailed factual allegations, it must offer more

22  than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."

23  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss brought

24  under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual mater, accepted as

25

---

26      [1] The Court notes that the Complaint later states that plaintiff was "ready to return to work on July 29, 2013."  Id. ¶ 6.3.

27

28  ORDER GRANTING
    MOTION TO DISMISS - 2

true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555); plaintiff's allegations must "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.  In ruling on such a motion, the Court must assume the truth of a plaintiff's well-pled facts and draw all reasonable inferences in her favor.  Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 663 (9th Cir. 1998).

A complaint may be found deficient for failing to assert (a) a cognizable legal theory or (b) sufficient facts to support a cognizable legal theory.  Zixiang v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013).  If the Court dismisses a complaint or portions thereof, it must grant the plaintiff leave to amend under Fed. R. Civ. P. 15(a)(2), "unless it is clear that the complaint could not be saved by any amendment."  Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003).

**B.     ADA Claim**

Defendant contends that the only cause of action that plaintiff has asserted under the ADA and WLAD is that defendant failed to "reasonably accommodate" her disability.  Dkt. # 9 at 4.  Plaintiff does not dispute this construction of the Complaint.  Dkt. # 12.  To establish a prima facie case for failure to accommodate under the ADA, plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability.  Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012).  An individual is disabled (to satisfy the first showing) if she:

>   (a)   Has a physical or mental impairment that substantially limits one or more of the individual's major life activities;
>
>   (b)   Has a record of such an impairment; or
>
>   (c)   Is regarded as having such an impairment.

Coons v. Secretary of U.S. Dep't. of Treasury, 383 F.3d 879, 884 (9th Cir. 2004) (citing 42 U.S.C. § 12102(2)).  Under federal regulations implementing the ADA, an individual is not entitled to reasonable accommodations if her only basis for alleging disability is that her

ORDER GRANTING
MOTION TO DISMISS - 3

employer "regarded her" as disabled. 29 C.F.R. § 1630.2(o)(4). Thus, plaintiff's claim that she is disabled could only fall under one of the first two prongs.

### 1. Disability

All that plaintiff alleges to establish that she was disabled at the time of her termination is that she suffered from anxiety, panic attacks and neck pain; that she requested medical leave from her employer; and that she received nine months of medical leave. Dkt. # 1 ¶ 3.1. The question presented is whether this is sufficient to plead that her impairments substantially limited her ability to work or that records exist establishing that she suffered from such impairments.

Plaintiff cites no case whatsoever for this proposition, while defendant cites several cases from other Circuits in opposition, only one of which is analogous. See Townsend v. N.J.Transit & Amalgamated Transit Union, 2010 WL 3883304, at *2 (dismissing for failure to assert a plausible claim under the ADA, where plaintiff with carpal tunnel syndrome and right shoulder impingement syndrome "went on disability" but was denied leave under the Family and Medical Leave Act). Importantly, although Townsend dismissed plaintiff's ADA claims as improperly pled, id., it never expressly held that plaintiff had failed to adequately plead that he was disabled, which limits this case's usefulness to the Court. While defendant's other cases dismiss ADA claims where plaintiffs did not establish how their alleged impairments affected their activities, none involved a plaintiff who had received medical leave. Furthermore, while defendant argues otherwise, there is no ambiguity in the Complaint as to the nature of plaintiff's alleged impairments or the substantial life activity (work) affected.

This Court finds that plaintiff's claim that she was granted a nine-month leave of absence by her employer due to her impairments gives rise to the plausible inference that her impairments substantially limited her ability to work. Importantly, plaintiffs claiming a limited ability to work under the ADA no longer need to plead that their impairments limited their ability to perform a "class of jobs or a broad range of jobs;" previously, courts in this Circuit applying this standard have found that individuals who took extended leaves of absence from

ORDER GRANTING
MOTION TO DISMISS - 4

work had not adequately pled being disabled. See Baker v. Cnty. of Merced, 2011 WL 2708936, at *5 (E.D. Cal. July 12, 2011). Plaintiff's allegations suffice under today's statute and regulations because she has adequately pled that her ability to do her specific job was significantly compromised.

### 2. Qualified Individual

Plaintiff has not adequately pled that she was qualified to perform the essential functions of her job with reasonable accommodation. It should be noted that the Complaint does satisfy this element in part; it asserts that plaintiff was "ready, willing and able to work" as of August 2013, suggesting that she would have been able to resume her job responsibilities had she been given the reasonable accommodation of the additional month or two of medical leave that her doctor had recommended. Dkt. # 1 ¶ 3.7. Medical leave can constitute a reasonable accommodation. Reza v. Int'l Game Tech., 351 F. App'x 188, 190 (9th Cir. 2009).[2] It is clear from the Complaint that plaintiff sought this accommodation from her employer after becoming aware of her termination, and that her employer denied this accommodation.

However, plaintiff has not pled with adequate specificity that she could have resumed all essential functions of her job as a procurement financial analyst after returning from leave. The Complaint states plaintiff's job title and later states that plaintiff was "ready, willing and able to work" in August 2013, but leaves it to the Court to infer that she was performing the essential functions of her job before taking leave and could return to those functions; this asks the Court to infer too much. Plaintiff asks the Court to speculate, and as such her ADA claim is only "conceivable" rather than "plausible," which is insufficient under Twombly. 550 U.S. at 547; cf. McCormack v. Advanced Micro Devices, 1994 WL 715655, at *1 (N.D. Cal. Dec. 20, 1994)

---

[2] Although this may be inferred from the Complaint, plaintiff did not make this argument. In opposing the motion to dismiss, plaintiff argued she was a "qualified individual" because she was able to work without accommodation within a month of being terminated. However, the relevant issue is whether, at the time of her termination, plaintiff should have received the accommodation that would have allowed her to resume her work. See Steiner v. Verizon Wireless, 2014 WL 202741, at *5 (E.D. Cal. Jan. 17, 2014).

ORDER GRANTING
MOTION TO DISMISS - 5

(finding plaintiff did not adequately plead the "qualified individual" element where the Complaint merely stated that she was "allowed to return to work" by her doctor); Shaw-Owens v. The Bd. of Trustees of Cal. State Univ., 2013 WL 4758225, at *2 (N.D. Cal. Sept. 4, 2013) (dismissing for failure to plead a disability, but also holding that the Complaint should be amended to clearly state, instead of merely imply, that plaintiff was qualified to resume her former position).  For this reason, plaintiff's ADA claim must be dismissed.

### 3. Adverse Employment Action

The Court finds that plaintiff has adequately pled that her disability (and defendant's failure to accommodate this disability) was the cause of her termination.  The Complaint explicitly states that plaintiff was terminated because she applied for "government benefits," presenting this as the only factor motivating her firing.  Dkt. # 1 ¶ 3.5.  However, plaintiffs are permitted to plead alternative theories, Fed. R. Civ. P. 8(d)(2), and there is no inherent inconsistency in arguing that defendant terminated her employment both because defendant did not want to accommodate her disability and in retaliation for her pursuit of benefits.

For the foregoing reasons, the Court DISMISSES plaintiff's ADA claim but GRANTS plaintiff leave to amend.

### C. WLAD

The WLAD prohibits an employer from discharging any employee "because of . . . the presence of any sensory, mental, or physical disability." RCW 49.60.180(2).[3]  To bring an action under the WLAD for lack of accommodation, a plaintiff must establish (1) that she had an abnormality that substantially limited her ability to perform her job; (2) that she was qualified to perform the essential functions of the job; (3) that she gave her employer notice of the abnormality and its accompanying substantial limitations; and (4) that the employer, upon notice, failed to affirmatively adopt available measures medically necessary to accommodate the

---

[3] The WLAD is highly similar to the ADA in its definition of disability and its requirements for someone to be qualified for a "reasonable accommodation" in employment.  RCW 49.60(7)(a); RCW 49.60(7)(d).

ORDER GRANTING
MOTION TO DISMISS - 6

disability. Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 145 (2004), overruled on other grounds by McClarty v. Totem Elec., 157 Wn.2d 214 (2006). Just as under the ADA, an employee is "qualified" if she is able to perform the essential functions of her job with or without reasonable accommodation. Davis v. Microsoft Corp., 109 Wn. App. 884, 890 (2002). Washington courts look to federal case law in interpreting the WLAD. Kumar v. Gate Gourmet Inc., 180 Wn.2d 481, 491 (2014).

Applying the same reasoning that it did to plaintiff's ADA claim, this Court finds plaintiff's WLAD claim deficient only in the Complaint's failure to properly allege that plaintiff was prepared to resume the essential functions of her job as of August 2013. This claim is DISMISSED, with plaintiff GRANTED leave to amend.

**D.     Wrongful Termination In Violation of Public Policy**

Plaintiff argues that defendant violated public policy by terminating her for seeking unemployment benefits, thereby making her termination wrongful and actionable under Washington law.[4] Dkt. # 12 at 2. While at-will employment is the default rule in Washington, a narrow exception to this rule is that an employer may not terminate an employee "when the termination would frustrate a clear manifestation of public policy." Roe v. TeleTech Customer Care Mgmt. (Col.) LLC, 171 Wn.2d 736, 754-55 (2011). To prevail on this claim, plaintiff must prove four elements:

(1)     The existence of a clear public policy (the clarity element);

(2)     That discouraging the conduct in which [plaintiff] engaged would jeopardize the public policy (the jeopardy element);

(3)     That the public-policy-linked conduct caused the dismissal (the causation element); and

(4)     That defendant has not offered an overriding justification for the dismissal (the absence of justification element)

---

[4] Although the Complaint also implies that defendant also violated public policy by terminating plaintiff for taking a leave of absence, Dkt. # 1 ¶ 5.3, plaintiff's opposition brief makes clear that her only theory under this cause of action is that defendant terminated her for seeking unemployment benefits. The Court therefore finds that plaintiff has abandoned her alternative theory.

ORDER GRANTING
MOTION TO DISMISS - 7

Id. at 756.  Among the most common circumstances under which Washington courts recognize the public policy exception is when an employer terminates an employee for exercising a legal right or privilege.  Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 937 (1996).  Plaintiff's cause of action for "wrongful termination in violation of public policy" fails as a matter of law because she cannot satisfy the jeopardy element.

Plaintiff argues that her cause of action is supported by Washington's public policy favoring making unemployment benefits available to the disabled.  Dkt. # 12 at 2-4.  Assuming arguendo that plaintiff properly pled the existence of this policy,[5] plaintiff cannot claim that permitting employers to fire individuals in her position would "jeopardize" it.  Satisfying the jeopardy element requires plaintiff to show that her conduct "directly relates to the public policy or is necessary for effective public policy enforcement;" this in turn requires plaintiff to establish that "other means of promoting the public policy are inadequate."  Cudney v. ALSCO, Inc., 172 Wn.2d 524, 529 (2011).  If other adequate means exist to promote the policy without the assistance of plaintiff's conduct, then the policy was not jeopardized by plaintiff's termination and she has no private cause of action.  Id.  These other means "need not be available to a particular individual," even plaintiff herself, id. at 537, meaning that jeopardy may be found not to exist even if an aggrieved employee has no private remedy for her wrongful termination, Weiss v. Lonnquist, 173 Wn. App. 344, 359 (2013).[6]  While the question of whether jeopardy exists generally presents a question of fact, the question of whether adequate alternative means for promoting a public policy exist presents a question of law where the court limits its inquiry

---

[5] This policy may exist for the purposes of the clarity element, given that Washington allows the disabled to seek these benefits.  See RCW 50.20.050(1)(b).  However, the Court notes that plaintiff failed to identify this policy in the Complaint, which refers only to plaintiff's application for "government benefits" in June 2013, and thus did not adequately plead this element.  Dkt. # 1 ¶ 3.5.  Nevertheless, the Court focuses on plaintiff's failure under the jeopardy element, as this clearly prevents plaintiff from sustaining this cause of action.

[6] In spite of this rule, the Court acknowledges that in many cases where no jeopardy has been found, it was relevant to the court that the law discouraged employers from retaliating against plaintiffs for their conduct.  E.g., Korslund, 156 Wn.2d at 182.

ORDER GRANTING
MOTION TO DISMISS - 8

to determining whether existing laws adequately serve the policy. Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wn.2d 168, 182 (2005); see Macon v. United Parcel Service, Inc., 2012 WL 5410289, at * 9 (W.D. Wash. 2012) (rejecting plaintiff's jeopardy theory on motion to dismiss).

In Cudney, plaintiff had been terminated for informing his employer that his superior was driving drunk, and brought a wrongful termination action premised (in part) on Washington's policy against drunk driving. 172 Wn.2d at 526. The Court found no jeopardy because the state's DUI laws and "legal and police machinery" adequately promoted this public policy. Id. at 537. Because plaintiff's act of reporting on his superior was not necessary to promote the policy, his conduct did not need the protection of a wrongful termination tort claim. Id.

The policy in question here is making unemployment benefits available to the disabled, and plaintiff's conduct consisted of applying for these benefits while she was still employed. The policy is already served by Washington's statutory framework allowing unemployed individuals to seek these benefits, RCW 50.20.050(1)(b), and prohibiting employers from directly interfering with this process, RCW 50.36.010-030. The Court does not see how firing employees in plaintiff's position would threaten or even affect the ability of the disabled to receive unemployment benefits after they actually became unemployed. Importantly, the Court finds no clear public policy mandate to allow those who currently have jobs to seek unemployment benefits, an occurrence that plaintiff concedes is uncommon. Dkt. # 12 at 3. Given the narrowness of the public policy wrongful-termination doctrine, the Court finds that existing statutes adequately promote the policy of making unemployment benefits available to the disabled by availing these benefits to the jobless. Plaintiff may not assert a wrongful termination claim on the grounds suggested by her Complaint and opposition brief.

### E. Withholding of Wages

Plaintiff seeks double damages under RCW 49.52.070 for back wages from the date of her firing onward, as well as attorney's fees under RCW 49.48.030 (which is triggered by a

ORDER GRANTING
MOTION TO DISMISS - 9

plaintiff's successful recovery of wages or salary owed).  Dkt. # 1 ¶¶ 6.1-6.4.  Defendant argues that plaintiff cannot seek double damages because RCW 49.52.070 does not apply to wages that plaintiff would have earned but for her termination.  Dkt. # 13 at 7-8.

RCW 49.52.070 is triggered by violations of RCW 49.52.050(2),[7] a criminal statute that prohibits employers from "[w]illfully with intent to deprive the employee of any part of his or her wages" paying said employee "a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract[.]"  In Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1203 (9th Cir. 2002), the Ninth Circuit held that this provision (and thus the double damages statute) did not apply to the wages awarded plaintiffs from defendant's violation of federal and state anti-discrimination statutes (Title VII of the Civil Rights Act and the WLAD), as defendant's "obligation" to pay plaintiffs under this statute did not legally accrue prior to the jury verdict.  The case has been read to suggest that a wrongfully-terminated employee may not recover lost wages and double damages even after successfully litigating that her termination was wrongful.  Dice v. City of Grand Coulee, 2012 WL 4793718, at *8 (E.D. Wash. Oct. 9, 2012).  The Hemmings dissent argued that construing RCW 49.52.050 liberally, as the Washington Supreme Court intended, would necessitate finding that both it and the double damages statute could apply depending on whether defendant had willfully intended to deprive plaintiffs of their wages.  285 F.3d at 1204-05 (Pregerson, J.).

Of the very few Washington opinions to address this holding from Hemmings, the most significant is Allstot v. Edwards, 114 Wn. App. 625 (2002).  In Allstot, a police officer who had been wrongfully terminated sought back wages and double damages after successfully litigating for his reinstatement.  Id. at 626.  While the court noted that Hemmings barred recovery of double damages under RCW 49.52.070 in certain circumstances, the court held that the dispositive issue was whether defendant had "willfully" deprived plaintiff of his wages, in

---

[7] RCW 49.52.070 is also triggered by employers' violations of RCW 49.52.050(1); however, that provision is not relevant to this case.

ORDER GRANTING
MOTION TO DISMISS - 10

apparent agreement with the Hemmings dissent. Id. at 634.  On this basis, the court found a jury question and concluded that substantial evidence supported giving plaintiff's jury an instruction that plaintiff could receive double damages. Id. at 635.[8]

In interpreting state law, federal courts are bound by pronouncements of the state's highest court; if a particular issue has not been decided, the Court must predict how the state's highest court would resolve it, looking to existing state law.  Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia, 379 F.3d 557, 560 (9th Cir. 2004).  The Supreme Court has asked that RCW 49.52.050 be liberally construed to advance the legislative intent of protecting employee wages.  Schilling v. Radio Hldgs., Inc., 136 Wn.2d 152, 160 (1998).  Nevertheless, this Court finds it appropriate to adopt the interpretation of the Hemmings majority.  Applied to the instant case, Hemmings would hold that plaintiff is not entitled to double damages due to defendant's alleged wrongful termination.  Neither RCW 49.52.050(2) nor RCW 49.52.070 apply, and plaintiff's claim for double damages is DISMISSED without leave to amend.

RCW 49.48.030 was not addressed by the Hemmings court and does not fall under its restrictions, as the Allstot court noted.  114 Wn. App. at 633 (citing Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 35 (2002)).  Defendant has offered no argument concerning this statute.  The statute's applicability is, however, contingent on plaintiff successfully recovering a judgment for wages or salary, and plaintiff currently has no cause of action under which to recover either.  Whether plaintiff may attempt to recover wages owed from her date of termination onward under the ADA, the WLAD or some other theory (and whether this recovery would trigger the attorney's fees statute) was not briefed and is not before the Court.  For now, the Court DISMISSES plaintiff's claim for attorney's fees with leave to amend.

---

[8] The Allstot court also rejected the trial court's holding that plaintiff's back wages did not fall under RCW 49.52.050 because they constituted pay for work that was not actually done, id. at 633, an argument that defendant suggests in its memoranda, Dkt. # 9 at 12.

ORDER GRANTING
MOTION TO DISMISS - 11

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion to dismiss.  The Court DISMISSES plaintiff's claims for wrongful termination in violation of public policy and double damages for withheld wages under RCW 49.52.050 and RCW 49.52.070 without leave to amend, and DISMISSES plaintiff's ADA and WLAD claims with leave to amend, along with plaintiff's claim for attorney's fees in connection with withheld wages under RCW 49.48.030.  Plaintiff may file an amended complaint to cure the identified deficiencies within twenty-one (21) days of the date of this order.

DATED this 14th day of November, 2014.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge

ORDER GRANTING
MOTION TO DISMISS - 12